IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ANDESA SERVICES, INC. | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 23-1348 |
| | : | |
| HERMANN SONS LIFE | : | |

## ORDER-MEMORANDUM

**AND NOW**, this 8th day of May 2024, upon considering Plaintiff's Motion to dismiss a fraud counterclaim based on warranty and integration clauses in a written agreement (D.I. 46), Defendant's Opposition (D.I. 52), Plaintiff's Reply (D.I. 57), and finding the parties did not clearly bar Defendant's reliance on representations relating to Plaintiff's product functionality or experience (as opposed to promises of Plaintiff's future products or services covered by the anti-reliance language in an integration clause) before signing a Master Services Agreement, it is **ORDERED** Plaintiff's Motion to dismiss (D.I. 46) is **DENIED** requiring it file an Answer to the counterclaim (D.I. 37) by **May 22, 2024**.

## *Analysis*

Andesa Services, Inc. and Hermann Sons Life signed a Master Services Agreement on May 20, 2020 for the use of Andesa's software. The parties' relationship soured with Hermann Sons terminating the Agreement. Andesa sued Hermann Sons for breach of the Agreement seeking over $573,000 for services rendered.[1] Hermann Sons counterclaimed for fraud/fraudulent inducement and breach of contract.[2] Hermann Sons alleges Andesa misrepresented its expertise, capabilities,

---

[1] D.I. 26.

[2] D.I. 37.

and functionality of its software before and after it signed the Master Services Agreement.[3] Hermann Sons alleges these representations are false when made, Andesa knew its representations were false at the time it made the representations, Andesa made the representations to induce Hermann Sons to enter the Master Services Agreement and continue with the Agreement, and Hermann Sons relied on Andesa's misrepresentations to its detriment.[4] Andesa moves to dismiss Hermann Sons's fraud/fraudulent inducement counterclaim as barred by the anti-reliance language in the integration clause of the Master Services Agreement and the gist of the action doctrine.[5]

1. **Hermann Sons's fraud claim is not foreclosed by the Agreement.**

Andesa argues it disclaimed all warranties (other than those specified in the Agreement) including the warranty of fitness for a particular purpose and any warranty the Andesa System, professional services, or deliverables, will be error free or meet Hermann Sons's specific needs, or the use of the Andesa System will be uninterrupted, and Hermann Sons signed the Agreement with anti-reliance language foreclosing all types of fraud/fraudulent inducement claims. We studied the claimed anti-reliance language in the parties' integration clause. We agree with Andesa as to the language but Hermann Sons's claims are not clearly covered by the anti-reliance language. The anti-reliance language does not bar Hermann Sons's fraud claim.

We begin with the fundamental: a contract containing clear anti-reliance language under which a commercial party promises it did not rely on statements outside the contract's four corners in deciding to sign the contract forecloses a fraudulent inducement claim.[6] But the language needs

---

[3] D.I. 37 ¶¶ 44-53.

[4] *Id.*

[5] D.I. 46, 47. Andesa does not move to dismiss the breach of contract counterclaim.

[6] *Abry Partners V, L.P. v. F&W Acquisition, LLC*, 891 A.2d 1032 (Del. Ch. 2006).

to be clear. "Murky" integration clauses or standard integration clauses without explicit anti-reliance language do not relieve a party of potential liability for its oral and extra-contractual fraudulent misrepresentations allegedly intended to induce the agreement.[7] "Magic words" are not required, but the reliance must establish the "universe of information" on which the party relied.[8]

We turn to the language agreed by these two business entities. The parties agreed, in Section 14.11 of the Agreement, to an integration clause providing in part:

> **Entire Agreement.** This Agreement and any Exhibits, Orders, and Statements of Work hereto constitute the complete understanding between the parties with respect to the subject matter of this Agreement and, supersedes all previous written or oral agreements, proposals, request for proposal responses, and representations. Additionally, the parties acknowledge that there are no contemporaneous side-letters, or oral or other arrangements that contradict, alter, or otherwise serve to modify any of the terms set forth in this Agreement. [Hermann Sons] acknowledges and agrees that with the exception of any specifications regarding functionality or feature as may be mutually agreed in an Order, Statement of Work or amendment, [Hermann Sons] has not relied on the potential availability of any future product, functionality, or feature, or any statement or representation by Andesa or its employees concerning the potential availability of any future product, functionality, or feature, in entering into this Agreement.[9]

Andesa has not persuaded us the integration portion of Section 14.11 creates clear anti-reliance language barring its claims relating to historical representations not relating to future products or features. The first sentence of Section 14.11 is a standard integration clause without explicit anti-reliance representations. A standard integration clause without "explicit anti-reliance representations" and "not accompanied by other contractual provisions demonstrating with clarity

---

[7] *Id*. at 1059.

[8] *Prairie Capital III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 51 (Del. Ch. 2015).

[9] D.I. 37–1, Master Services Agreement, § 14.11.

that the plaintiff had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims."[10]

The second sentence of Section 14.11 is the only reference to specific items which the parties are disclaiming pre-agreement reliance: (1) "the potential availability of any future product, functionality, or feature" or (2) "any statement or representation by Andesa or its employees concerning the potential availability of any future product, functionality, or feature, in entering into this Agreement."[11] But this specific anti-reliance does not include "specifications regarding functionality or feature as may be mutually agreed" in an "Order" or "Statement of Work" or amendment. So we can discern a specific agreement for Hermann Sons to not to rely on statements or representations on the potential availability of a future product, functionality, or feature. We would think a representation as to a future software version, functionality, or product would fall within this specific clause. The key language is future conduct or functionality. But Hermann Sons is not alleging statements relating to future products, functionality, or feature.

Section 14.11 is otherwise ambiguous as it relates to Hermann Sons's pleaded fraudulent statements. Hermann Sons did *not* rely on representations when entering the Agreement as to *future* product, functionality, or features. But Hermann Sons is not alleging representations as to future product, functionality, or features. There is no clear anti-reliance language regarding past representations regarding Andesa's present experience and expertise as Hermann Sons alleges are fraudulent to induce it into the Agreement.

---

[10] *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004).

[11] D.I. 37–1, Master Services Agreement, § 14.11.

The only possible language which may otherwise preclude reliance could arise from a strained interpretation of "functionality" without the modifier "future." We appreciate Hermann Sons may be arguing about the functionality of the software. But this interpretation is not clear; it is instead ambiguous as best. We read the anti-reliance clause as to representations as to future functionality.

Guided by Vice Chancellor Strine's analysis in *Abry Partners* and Vice Chancellor Laster's analysis in *Prairie Capital*, a sufficient anti-reliance clause must "define what information the [b]uyer relied on in deciding to execute" the Agreement.[12] Andesa and Hermann Sons did not agree to such a clearly defined provision as it related to Hermann Sons's alleged fraudulent representations as to past and present experience and expertise.

### 2. The gist of the action doctrine does not bar Hermann Sons's fraud claim.

The gist of the action doctrine precludes tort claims arising from contractual breaches. It is a common law theory "designed to maintain the conceptual distinction between breach of contract claims and tort claims."[13] To evade the doctrine's preclusive effect, "the wrong ascribed to defendant must be the gist of the action, the contract being collateral."[14] The fact the parties have a contract does not preclude a tort claim, but the tort claim must arise from a separate or independent event.[15]

---

[12] *Abry Partners*, 891 A.2d at 1041.

[13] *Livery Coach Solutions, LLC v. Music Express/East, Inc.*, 245 F. Supp. 3d 639, 644 (D. Del. 2017) (quoting *Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 186 (3d Cir. 2015)).

[14] *Id.* (quoting *Pediatrix Screening, Inc. v. TeleChem Int'l, Inc.*, 602 F.3d 541, 548 (3d Cir. 2010)).

[15] *In re Main Street Business Funding, LLC*, 2004 WL 1296907, *3 (Bankr. D. Del. Mar. 26, 2024) (quoting *Brown & Brown, Inc. v. Cola*, 745 F. Supp. 2d 588, 619 (E.D. Pa. 2010)).

5

We are directed by our Court of Appeals to determine whether the duty on which the breach of contract claim rests is the same as the basis for the tort claim.[16] The "critical determinative factor" is "the nature of the duty alleged to have been breached."[17] Allegations sound in contract if the alleged breach of duty is created by the terms of the parties' contract.[18] Allegations sound in tort if the conduct violates "a broader social duty owed to all individuals … imposed by the law of torts" existing regardless of the contract.[19]

Andesa contends Hermann Sons's fraud claim is really a breach of contract claim based on Andesa's alleged failure to meet its contractual promises under the Master Services Agreement. Hermann Sons responds its fraud claim is based on Andesa's misrepresentations regarding its expertise in the fraternal insurance market, capabilities of its software platform, and success with other fraternal insurers relied on by Hermann Sons to enter the Agreement.

We turn to Hermann Sons's allegations of fraud. Hermann Sons alleges Andesa represented both before and after it signed the Agreement: (a) it offered a software platform specifically designed for the fraternal insurance market; (b) the use of its software would result in "dramatic efficiency gains"; (c) its software solution would provide "out of the box" capability and operation for fraternal insurers; (d) its software solution would deliver significantly reduced hardware costs with highly predictable support expenses; (e) use of its software would result in "streamlined client services"; (f) promised to deliver an "owner self-service portal"; (g) its software solution

---

[16] *Philidor RX Servs. LLC v. Polsinelli PC*, 2023 WL 6290746, at *5 (3d Cir. Sept. 27, 2023) (quoting *Norfolk S. Ry. Co. v. Pittsburgh & W.Va. R.R.*, 879 F.3d 244, 256 (3d Cir. 2017) (applying Pennsylvania's gist of the action).

[17] *Id.* (quoting *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 217 (3d Cir. 2022)).

[18] *Id.* (quoting *Bruno v. Erie Ins. Co.,* 106 A.3d 48, 68 (Pa. 2014)).

[19] *Id.*

effectively and capably supported "several fraternal carriers"; and (h) promised "speed to market" in the adoption and implementation in its software.[20] Hermann Sons alleges these representations were false when made, Andesa knew these were false, Hermann Sons relied on the misrepresentations Andesa to induce Hermann Sons to sign the Master Services Agreement.[21]

We today accept all well-pleaded allegations as true and draw all reasonable inferences in favor of Hermann Sons when testing the sufficiency of its counterclaim allegations at this preliminary stage. The alleged misrepresentations go to Andesa's experience and expertise. Accepting Hermann Sons's allegations all the statements were false when made and Andesa knew its statements were false, Andesa may have "violated a societal duty not to make false statements and defraud others."[22] Hermann Sons alleges Andesa made the misrepresentations before the parties signed the Master Services Agreement to induce Hermann Sons to sign the Agreement.

Hermann Sons states a claim for fraudulent inducement separate from Andesa's alleged breach of the Agreement and not barred by the gist of the action doctrine. We deny Andesa's motion to dismiss.

*[signature]*
**KEARNEY, J.**

---

[20] D.I. 37, Counterclaim ¶¶ 44–53.

[21] *Id.* ¶¶ 47-53.

[22] *Livery Coach Solutions*, 245 F. Supp. 3d at 645.